**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT OF INGRAM BARGE COMPANY AS OWNER OF THE M/V DALE A. HELLER AND THE IB9525, IN025300, IN085089, IN095041, IN096081, IN107057, AND IN117513, PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY, | ) ) ) ) ) ) ) ) ) | |
| *Consolidated with,* | ) ) ) | Civil Action No.: 13 C 3453 Civil Action No.: 13 C 4292 (Consolidated) |
| IN THE MATTER OF AMERICAN COMMERCIAL LINES, LLC, AS OWNER AND INLAND MARINE SERVICE, INC. AS OWNER *PRO HAC VICE* OF THE LOYD MURPHY FOR EXONERATION FROM OR LIMITATION OF LIABILITY. | ) ) ) ) ) ) ) ) | Judge Amy J. St. Eve |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Ingram Barge Company ("Ingram") has filed a motion to dismiss the *in personam* claim that the United States asserts against Ingram under Section 408 of the Rivers and Harbors Act (the "Act"). For the following reasons, the Court grants Ingram's motion with prejudice [464].

**BACKGROUND**

On May 8, 2013, Ingram, as owner of the M/V Dale A. Heller ("Dale Heller") and seven barges, filed a complaint for exoneration from or limitation of liability. The complaint anticipated that claimants would bring various claims against Ingram, the Dale Heller, and the seven barges as a result of an April 18, 2013 incident. (R. 1, Compl. at 3-4.)[1] Ingram's complaint alleges that due to severe weather conditions on April 17, 2013, the Dale Heller

---

[1] Record cites are to *In the Matter of Ingram Barge Company*, No. 13 C 3453.

1

temporarily moored at Mile 248.0 in the Illinois River to plan for its traversal past the Marseilles, Illinois Dam and into the Marseilles Canal. (*Id*. at 3.) On April 18, 2013, the M/V Loyd Murphy, owned by American Commercial Lines, LLC ("ACL") and operated by Inland Marine, and two United States Army Corps of Engineers vessels agreed to assist the Dale Heller and its tow in navigating past the Marseilles Dam. (*Id*.) Ingram's complaint alleges that "[w]hile traversing Mile 247.0 near the Marseilles Dam, due to unanticipated outdrafts from open gates of the dam, the tow broke up, and [Ingram's] seven [] barges were swept into the Marseilles Dam" and "may have allided" with the dam. (*Id*.) The Complaint also asserts that "[t]he event was caused by an Act of God, and/or the acts or omissions of others for whom Ingram is not responsible." (*Id.* at 4.)

On June 24, 2013, the United States filed a claim in Ingram's limitation action for damages to the Marseilles Dam and related structures. (R. 129.) The United States' claim alleges three counts against Ingram: 1) violations of sections 408 and 409 of the Rivers and Harbors Act; 2) negligence under the general maritime law; and 3) creation of a public nuisance. (*Id*. at 17-22.) The United States seeks the expenses it incurred to remove Ingram's barges from the dam, and the costs to repair damage caused by the barges. (R. 473, Opp. to Mot., at 3.) The United States represents that to date it has spent more than $6.8 million for repairs and will incur additional costs, including a $19.9 million contract to repair the dam. (*Id*.)

Ingram now moves to dismiss the government's first count under section 408 of the Rivers and Harbors Act to the extent it asserts an *in personam* claim against Ingram, rather than an *in rem* claim against the Dale Heller and its tow of seven barges.

**LEGAL STANDARD**

Ingram brings its motion under Rule 12(b)(6), although the government argues that Ingram should have brought it under Rule 12(c) because the pleadings have closed. Regardless, courts apply the Rule 12(b)(6) standard to both. *See Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) ("[w]e review Rule 12(c) motions by employing the same standard that applies when reviewing a motion … under Rule 12(b)(6)"). "A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true," *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013), and draw "reasonable inferences in favor of the plaintiffs." *Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC,* 741 F.3d 819, 823 (7th Cir. 2014).

**ANALYSIS**

Ingram moves to dismiss the *in personam* claims brought by the United States under Section 408 of the Rivers and Harbors Act. Section 408 proscribes conduct that damages a water-control structure built by the United States. It states in pertinent part:

> It shall not be lawful for any person or persons to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States, or

3

> any piece of plant, floating or otherwise, used in the construction of such work under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters or to prevent floods, or as boundary marks, tide gauges, surveying stations, buoys, or other established marks, nor remove for ballast or other purposes any stone or other material composing such works[.]

33 U.S.C. § 408. Section 408 does not itself provide a remedy. Instead, Sections 411 and 412 of the Act provide two different remedies for violations of Sections 408 (and certain other sections of the Act). Section 411 authorizes criminal penalties for "[e]very person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, 409, 414 and 415 … " *Id*. § 411. Section 412 provides that the government may bring an *in rem* claim against the vessel that caused the violation of the Act. It states in part:

> …[A]ny boat, vessel, scow, raft, or other craft used or employed in violating any of the provisions of sections 407, 408, 409, 414, and 415 of this title shall be liable for the pecuniary penalties specified in section 411 of this title, and in addition thereto for the amount of the damages done by said boat, vessel, scow, raft, or other craft, which latter sum shall be placed to the credit of the appropriation for the improvement of the harbor or waterway in which the damage occurred, and said boat, vessel, scow, raft, or other craft may be proceeded against summarily by way of libel in any district court of the United States having jurisdiction thereof.

33 U.S.C. § 412.

Ingram argues that because the Act only specifically provides for *in rem* liability against the vessel that caused the Section 408 violation, the government cannot bring an *in personam* claim against it. The government does not dispute that the Act only specifically provides for *in rem* liability for violations of Section 408, not *in personam* liability. It argues instead that the Court should find that the government has an implied right to bring an *in personam* claim under Section 408.

## I. Seventh Circuit Precedent

The parties first disagree over the applicability of Seventh Circuit precedent. Ingram contends that the law in the Seventh Circuit is settled that Section 408 only provides for *in rem* liability. The government disagrees, arguing instead that the Seventh Circuit authority on this issue is unresolved.

The key case in the Seventh Circuit is *United States v. Ohio Valley Co., Inc.*, 510 F.2d 1184 (7th Cir. 1975). In *Ohio Valley*, the Seventh Circuit addressed the question of whether a defendant could assert Section 3 of the Limitation of Liability Act, 46 U.S.C. § 183(a), as a defense to a Section 408 claim. *Id*. Section 183(a), now codified at 46 U.S.C. § 30505, provides for a defense limiting the liability of an owner of a vessel if the claims arose as a result of conduct taken "without the privity or knowledge of the owner." 46 U.S.C. § 30505. In holding that a defendant could not rely on that defense to limit liability under Section 408, the court reasoned in part that such a limitation would not make sense because Section 408 only permits *in rem* recovery. *Ohio Valley*, 510 F.2d at 1188-89. In other words, if the government can only recover directly against a vessel, a defense based on the owner of the vessel's lack of privity or knowledge would not logically apply. *Id*. The Seventh Circuit stated:

> Sections [408] and [412] speak in terms of a vessel being liable for the damages caused to a United States work. Thus, the United States must proceed in rem under section [408] and the relevant part of section [412]. Indeed, the government at oral argument admitted that there could be no in personam liability under its Count II.[2] In an in rem proceeding where amounts claimed in excess of the value of the res seized cannot be levied upon, the judgment for all practical purposes will always be limited to the value of the res which will generally be the value of the ship plus cargo. The in rem liability of section [412] for an action brought pursuant to sections [408] and [412] is not amenable to section 183(a) limitation which refers only to limiting the in personam liability of an owner of a vessel.

---

[2] In its response brief, the government argues that counsel for the government in *Ohio Valley* only made this admission because it did not seek *in personam* liability under Count II as the value of the vessel in the *in rem* claim exceeded the amount of damages sought by the government. Regardless of the reason for the government's admission in *Ohio Valley*, it is clear that the court based its decision on the fact that the Act precludes the government from asserting an *in personam* claim for a Section 408 violation. *Ohio Valley*, 510 F.2d at 1188-89.

5

*Id*.

In reaching its decision, the Seventh Circuit also examined the Supreme Court's decision in *Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). In *Wyandotte*, the Supreme Court held that the government has an implied right to bring an *in personam* claim under Section 409 of the Rivers and Harbors Act. *Id*. at 193-94, 88 S.Ct. 379. Section 409, known commonly as the "Wreck Act," prohibits the obstruction of navigational channels, including by sunken vessels. It states:

> It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft; or to sink, or permit or cause to be sunk, vessels or other craft in navigable channels; or to float loose timber and logs, or to float what is known as "sack rafts of timber and logs" in streams or channels actually navigated by steamboats in such manner as to obstruct, impede, or endanger navigation.

33 U.S.C. § 409. Importantly, the Wreck Act also establishes that in the event a vessel is wrecked and sunk in a navigable channel, "it shall be the duty of the owner, lessee, or operator of such sunken craft to immediately mark it with a buoy or beacon during the day and … a light at night … " and to "commence the immediate removal of the [vessel], and prosecute such removal diligently…" *Id*. *Wyandotte* reached its holding in part because it found that the duties imposed by Section 409 on the owner of a sunken vessel implied that the government should be able to assert an *in personam* claim against the owner directly, and not solely an *in rem* claim against the sunken vessel. *Wyandotte*, 389 U.S. at 204-205, 88 S.Ct. 379.

In *Ohio Valley*, the Seventh Circuit applied the holding in *Wyandotte* to its analysis of whether the Limitation of Liability Act applied as a defense to Section 408. It reasoned that because *Wyandotte* implied an *in personam* remedy under the Wreck Act and courts have generally held that the Limitation of Liability Act cannot serve as a defense to a Section 409 claim, the fact that Section 408 does not permit *in personam* liability meant that the Limitation of

6

Liability Act was even more inapplicable to Section 408. *Ohio Valley*, 510 F.2d at 1189 n. 9.

The Seventh Circuit explained:

> On this point our question is easier than the wreck statute cases. The wreck statute placed a duty on the owner to remove vessels that were obstructions and ever since the *Wyandotte* decision it has been clear that owners could be charged with removal expenses that exceeded the value of the vessel. Even under the wreck statute where an owner's liability was at issue, the courts have refused to apply the Limitation of Liability Act, a fortiori under section [412] where only the liability of the vessel is involved the limitation of liability provisions do not apply.

*Id*. Thus, while the parties in *Ohio Valley* did not directly present the Seventh Circuit with the issue of whether the government could bring an *in personam* claim under Section 408, the Seventh Circuit based its decision in part on such a claim being unavailable to the government.[3] *Id*. at 1188-89. Accordingly, the Court views the Seventh Circuit in *Ohio Valley* as holding that the government may not bring an *in personam* claim under Section 408.[4] *See Tate v. Showboat Marina Casino P'ship*, 431 F.3d 580, 582 (7th Cir. 2005) ("the holding of a case includes, besides the facts and the outcome, the reasoning essential to that outcome"); *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (noting that one basis for treating a passage as dictum rather than a case's holding is where "the passage was not an integral part of the earlier opinion—it can be sloughed off without damaging the analytical structure of the opinion").

## II.   *Wyandotte*

The government next argues that the Court should find an implied *in personam* remedy under Section 408 based on the Supreme Court's decision in *Wyandotte*. As discussed above,

---

[3] The Seventh Circuit in *Ohio Valley* also based its decision on several other factors, including that applying the Limitation of Liability Act to Section 408 would be inconsistent with the purpose of the Rivers and Harbors Act and Section 408's strict liability provisions. The court also noted that it did not know of any other decision that applied the Limitation of Liability Act to Section 408. *Ohio Valley*, 510 F.2d at 1188.

[4] The government cites *United States v. Peavey Barge Line*, 748 F.2d 395 (7th Cir. 1984) for the proposition that the government may bring an *in personam* claim under Section 408. In that case, however, it appears that the parties never raised the issue of whether the government's *in personam* claim was valid and the Seventh Circuit never addressed it. Accordingly, the Court does not treat that case as controlling.

*Wyandotte* held that the government had an implied right to bring an *in personam* action under Section 409 of the Act. While the government acknowledges that the *Wyandotte* decision was based in part on the duties that Section 409 imposes on the owner of a vessel (which Section 408 does not impose), it argues that the Supreme Court also based the *Wyandotte* decision on a number of other factors. The government states that these other factors include that the Rivers and Harbors Act is broad and is "obviously intended to prevent obstructions in the Nation's waterways," the United States may sue to protect its interests, the available penalties are inadequate, it would be extraordinary to shift the consequences of negligence from the wrongdoer to the victim, and Congress did not intend to withhold from the government a remedy that ensured the full effectiveness of the Act. (R. 473, Opp. to Mot., at 13) (quoting *Wyandotte*, 389 U.S. at 201, 88 S.Ct. 379). The government argues that based on these factors *Wyandotte* should also apply to Section 408.

Several other circuits, however, have rejected *Wyandotte's* application to Section 408 and emphasized the importance of the "duty-creating" language of Section 409 to the Court's decision in *Wyandotte*. In *In re Barnacle Marine Mgmt. Inc.*, 233 F.3d 865 (5th Cir. 2000), for example, the Fifth Circuit analyzed whether the holding in *Wyandotte* applied to Section 408. It held that it did not, stating:

> …*Wyandotte* does not control this § 408 case because the *Wyandotte* Court expressly relied on language peculiar to § 409 in implying an *in personam* remedy in favor of the United States against the vessel owner. The Court observed that § 409 created a duty on the owner of the sunken vessel to remove it. [*Wyandotte*], 389 U.S. at 206-07, 88 S.Ct. 379. This duty triggered the right of the United States to a declaratory judgment directing the vessel owner to remove the wreck. The Court stated that '[i]t is but a small step from declaratory relief to a civil action for the Government's expenses incurred in removing a negligently sunk vessel.' *Wyandotte*, 389 U.S. at 204, 88 S.Ct. 379 (citing *United States v. Perma Paving Co.*, 332 F.2d 754 (2d Cir. 1964)).
>
> Because § 408 does not give the United States the right to a declaratory order requiring the person responsible for damaging or impairing a public work to repair the work,

8

> *Wyandotte's* reasons for implying an *in personam* remedy under § 409 do not apply in this § 408 case.

*Id*. at 870.

The Tenth Circuit recently reached a similar conclusion in *United States v. Jantran, Inc.*, ___ F.3d ___, 2015 WL 1567036, No. 13-7060, at *5 (10th Cir. Apr. 9, 2015). It stated:

> In our view, *Wyandotte* is best read as relying on the unique, duty-creating language of § 409. Section 409's creation of a duty to remove sunken vessels was of obvious relevance to the Court's finding that the government could obtain an order directing ship owners to remove those same sunken vessels and, as the Court stated, '[i]t is but a small step from declaratory relief to a civil action.' *Wyandotte*, 389 U.S. at 204. The Court further highlighted the importance of § 409's duty-creating language to its *in personam* holding by noting that '[i]t would be surprising if Congress intended that … the Government's commendable performance of Wyandotte's *duty* must be at Government expense.' *Id*. at 204-05 (emphasis added)…
>
> The simple fact is that § 409 *does* contain an explicit duty, and that duty was key to finding an implied right to injunctive relief in *Wyandotte*. Because § 408 contains no such duty, there is no textual hook from which to infer that Congress intended for § 408 to authorize *in personam* relief.

*Jantran*, 2015 WL 1567036, at *5. Thus, both these decisions limited the holding in *Wyandotte* to Section 409 based on the duty that Section 409 imposes on vessel owners, and held that the government may not pursue a claim for *in personam* liability under Section 408.

The government notes that the Sixth Circuit has held that the government can bring an *in personam* claim under Section 408. *See Hines, Inc. v. United States*, 551 F.2d 717, 720-23 (6th Cir. 1977). In *Hines*, the Sixth Circuit addressed in part whether the Limitation of Liability Act could serve as a defense to a Section 408 claim, the same issue that the Seventh Circuit addressed in *Ohio Valley*. Where *Ohio Valley* based its holding in part on the fact that the government can only bring a Section 408 claim *in rem* against the offending vessel, *Hines* took the opposite position and assumed in its holding that the government could bring a Section 408 claim *in personam* against the vessel owner. *Id*. As the Tenth Circuit noted in *Jantran*,

9

however, in *Hines*, "it is far from clear that the Sixth Circuit even addressed the question of whether § 408 authorizes *in personam* relief. Rather, the court seems to have assumed that such relief was available and instead focused on the conflict between the two statutes at issue. Second, even assuming that the Sixth Circuit did decide the question, its opinion contains limited textual analysis and thus is of limited persuasive value." *Jantran*, 2015 WL 1567036, at *4.

As discussed above, the Seventh Circuit's finding in *Ohio Valley* that Section 408 does not permit *in personam* liability is binding on this Court. Even if it were not, however, the Court agrees with the reasoning in *Jantran* and *In re Barnacle Marine Management*. The holding in *Wyandotte* that the government has an implied right to bring an *in personam* claim under Section 409 was based on that section's unique language imposing an affirmative duty on vessel owners to remove a sunken vessel that obstructs a navigable waterway. Since there is no analogous duty under Section 408, there is not a basis for implying an *in personam* remedy where Congress did not provide for one explicitly. Finally, as the government notes in its response, it still has the ability to pursue its remaining Rivers and Harbors Act claims against Ingram, including its Section 408 *in rem* claim and its Section 409 *in rem* and *in personam* claims, in addition to its negligence and public nuisance claims.[5] Accordingly, the Court declines to find that the government has an implied right to bring an *in personam* claim under Section 408.

---

[5] Although the government discusses the possibility of moving to dismiss its Rivers and Harbors Act claims without prejudice in order to assert them outside of Ingram's limitation proceeding, the Court does not address that issue as the government has not yet moved for their dismissal.

10

## CONCLUSION

For the foregoing reasons, the Court grants Ingram's motion to dismiss the *in personam* claims brought by the United States under Section 408 of the Rivers and Harbors Act with prejudice.

DATED:  April 21, 2015						ENTERED

								_____
								AMY J. ST. EVE
								U.S. District Court Judge