IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF INGRAM BARGE COMPANY AS OWNER OF THE M/V DALE A. HELLER AND THE IB9525, IN025300, IN085089, IN095041, IN096081, IN107057, AND IN117513, PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY,<br><br>*Consolidated with,*<br><br>IN THE MATTER OF AMERICAN COMMERCIAL LINES, LLC, AS OWNER AND INLAND MARINE SERVICE, INC. AS OWNER *PRO HAC VICE* OF THE M/V LOYD MURPHY FOR EXONERATION FROM OR LIMITATION OF LIABILITY. | Civil Action No.: 13 C 3453<br>Civil Action No.: 13 C 4292<br>(Consolidated)<br><br>Judge Amy J. St. Eve |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On May 6, 2016, Petitioner Ingram Barge Company ("Ingram"), as owner of the M/V Dale A. Heller ("Dale Heller"), moved to exclude the testimony of the Marseilles Elementary School District's ("MESD") expert, Captain Christopher Karentz, pursuant to the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). (R.770). For the following reasons, the Court, in its discretion, grants in part and denies in part Ingram's motion.

### BACKGROUND

**I.  Factual Background**

This admiralty case arises from the Dale Heller's unsuccessful attempt to navigate its fourteen-barge tow past a federal dam located near the town of Marseilles, Illinois during a high-

water situation on April 18, 2013.  Other maritime vessels agreed to assist the Dale Heller in this navigation attempt, including: (1) the M/V Loyd Murphy ("Loyd Murphy"), operated by Inland Marine Service, Inc. ("IMS") and owned by American Commercial Lines, LLC; (2) the M/V City of Ottawa, a United States Army of Engineers ("Corps") vessel; and (3) the M/V Creve Coeur, another Corps vessel.  While traversing Illinois River Mile 247.0 near the Marseilles Dam, the Dale Heller's tow broke apart, and seven of its barges either allided with the dam or sank upriver from it.  Subsequent to this incident, the river waters overtopped the surrounding earthen dike and flowed into the town of Marseilles, causing substantial damage to real and personal property.

Ingram and IMS both filed a complaint in admiralty for exoneration from or limitation of liability in connection with this April 18, 2013 incident.  (R.1; R.1, 13-cv-04292).  The United States filed a claim in both limitation actions for damages to the Marseilles Dam and related structures.  (R.129, R.374).  Individual claimants also filed general maritime claims against Ingram, IMS, and the United States for their resulting property damage.

## II. Captain Karentz's Qualifications

Captain Karentz has a Bachelor's Degree in Marine Transportation from the Massachusetts Maritime Academy.  He holds an Unlimited Ships Masters License from the United States Coast Guard, along with several other maritime certifications.  In addition to education and professional accreditation, Captain Karentz has substantial experience navigating vessels, including freight vessels, oil tankers, research vessels, cargo vessels, and swath ships, in both oceanic and inland waters.  Captain Karentz also gained managerial and supervisory experience at Florida Marine Towing and Florida Fuels Incorporated, among others.  For the last 13 years, Captain Karentz has worked and testified as an expert witness in maritime vessel

operations, voyage planning, safety management, and regulatory compliance. (R.770-3, Karentz CV at 1-4; R.770-2, Karentz Dep. Tr. at 63).

### III. Captain Karentz's Expert Opinions

In his report dated March 4, 2016, Captain Karentz offers several opinions about the events of April 17-18, 2013, leading up to the dam allision. (R.770-4, Karentz Rep.). In particular, Captain Karentz opines on (i) Ingram's failure to act on available knowledge regarding the hazards of mooring at Ballards Island and approaching the Marseilles Dam in high waters, and (ii) Ingram's failure to follow best practices and to "implement a suitable action plan" given the situation at hand. (*Id.* at 10-15). In addition, Captain Karentz discusses the Ingram Safety and Policy Manual for Navigation (the "Manual") and concludes that it fails to provide contingency plan guidance with "baseline operating limits for operating in extraordinary conditions, such as high winds or high flood stages." (*Id.* at 13).

## DAUBERT STANDARD

"A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993)." *Brown v. Burlington No. Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014). "The rubric for evaluating the admissibility of expert evidence considers whether the expert was qualified, whether his methodology was scientifically reliable, and whether the testimony would have assisted the trier of fact in understanding the evidence or in determining the fact in issue." *Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 817 (7th Cir. 2014); *see also Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015) ("Rule 702 and *Daubert* require the district court to determine whether proposed expert testimony is both relevant and reliable"). Although the Seventh Circuit reviews "the

3

district court's application of *Daubert* [] de novo," if "the court adhered to the *Daubert* framework, then its decision on admissibility is reviewed for abuse of discretion." *Estate of Stuller v. United States*, 811 F.3d 890, 895 (7th Cir. 2016).

A district court's evaluation of expert testimony under *Daubert* does not "take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012); *see also Ortiz v. City of Chicago*, 656 F.3d 523, 536 (7th Cir. 2011) ("The admissibility determination is not intended to supplant the adversarial process, and so even 'shaky' testimony may be admissible"). Once it is determined that "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley*, 689 F.3d at 805 (quoting *Daubert*, 509 U.S. at 596). A district court's inquiry under *Daubert* is a flexible one and district courts have wide latitude in performing this gate-keeping function. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Hartman*, 758 F.3d at 818. "'[T]he key to the gate is not the ultimate correctness of the expert's conclusions,'" rather, "'it is the soundness and care with which the expert arrived at her opinion[.]'" *C.W. ex rel. Wood v. Textron, Inc.,* 807 F.3d 827, 834 (7th Cir. 2015) (citation omitted). The "proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence. *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

The Seventh Circuit has clarified that *Daubert*'s reliability and relevancy requirements "continue to apply in a bench trial." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010). "However, the usual concerns of the rule—keeping unreliable expert testimony

4

from the jury—are not present in such a setting[.]" *Id.* As such, the Court may defer making reliability determinations until after the evidence is presented. *Id.*; *see also Estate of Stuller*, 811 F.3d at 895 n.3 ("Where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702"); *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) ("the court can hear the evidence and make its reliability determination during, rather than in advance of, trial"). A district court conducting a bench trial must nevertheless provide more than "conclusory statements of admissibility or inadmissibility to show that it adequately performed its gatekeeping function." *Metavante*, 619 F.3d at 760.

## ANALYSIS

In this *Daubert* motion, Ingram asks the Court to exclude Captain Karentz's maritime liability opinions. (R.770). In support of this request, Ingram argues that (1) Captain Karentz is not qualified to render opinions regarding towboat operations on the Illinois River; (2) Captain Karentz's opinions repeat and rely on the purported expertise of other experts; (3) Captain Karentz's opinions are unsupported by the record; and (4) Captain Karentz's opinions are purely subjective.

**I.      Captain Karentz Is Qualified to Render Navigation Opinions in This Case**

"For a witness to be considered an 'expert,' Rule 702 requires that person to be qualified as such by knowledge, skill, experience, training, or education." *Lewis*, 561 F.3d at 705 (quotations omitted). Ingram challenges Captain Karentz's qualifications because "he has absolutely no experience whatsoever with the upper inland rivers or with handling large tows anywhere." (R.770-1, Opening Br. at 5). As the Court previously held with respect to another challenged maritime expert, however, "[h]yper-specialization—in this case, professional experience piloting a towboat pushing a multi-unit tow through the Marseilles Lock and Dam—

5

is not a prerequisite for admitting expert testimony in admiralty cases." (R.837, Opinion on Captain Kinsey *Daubert* Challenge, at 8) (the "Kinsey Opinion"). As Captain Karentz testified, moreover, he has significant inland river experience, including on the Mississippi River, the Delaware River, the James River, the Elizabeth River, and throughout the Atlantic Intracoastal Waterway. (R.770-2, Karentz Dep. Tr. at 36-40). In addition, he has navigated within the Saint Lawrence Seaway, which has a similar geography, topography, and lock-and-dam system to the Illinois Waterway. (*Id.* at 39). According to Captain Karentz, navigation principles applicable to these inland waters also apply to the Illinois River. (R.770-4, Karentz Rep. at 7-8, 15). Relatedly, his expert opinions are not specific to pilotage on the Illinois River or to the Marseilles Lock and Dam. (*Id.* at 1-2 ("Conclusions")). Rather, his expert report speaks to Ingram's purported mismanagement in the days and hours leading up to the dam allision.

Given Captain Karentz's training and experience in marine navigation, and the scope of his proffered testimony, the Court declines to bar his maritime liability opinions on qualification grounds.[1] *See Mike Hooks Dredging Co. v. Marquette Transp. Gulf-Inland, L.L.C.*, 716 F.3d 886, 894 (5th Cir. 2013) (district court did not abuse discretion in admitting expert witness who lacked "practical experience" with the Gulf Intracoastal Waterway where the witness had "extensive experience with maritime navigation" in other countries); *see also Fed. Ins. Co. v. Arthur Andersen, LLP*, No. 1:03CV01174, 2006 WL 6555232, at *2 (N.D. Ill. Jan. 18, 2006) (concluding that the proposed expert possessed the "knowledge, skill, and experience necessary to satisfy the threshold of admissibility under Rule 702").

---

[1] Ingram's overarching challenge as to Captain Karentz's "jack of all trades" history as an expert witness in maritime cases, if anything, speaks to the weight of his opinions – not their admissibility.

## II. Some of Captain Karentz's Opinions Are Irrelevant

Ingram next challenges Captain Karentz's opinions on relevance grounds. In particular, Captain Karentz opines that there were "options" available to Ingram on April 18, apart from the attempted canal transit. In addition, he opines that the presence of the Loyd Murphy alongside the Dale Heller "most likely had a detrimental effect" on its ability to hold position at Ballards Island. (R.770-4, Karentz Rep. at 10-11, 14). To render these opinions, however, Captain Karentz relies exclusively on the opinions of Captain Kinsey, Captain Jamison, and Dr. Orloff – the United States' experts in this case. (*See id*.)

As the Seventh Circuit instructs, "It is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert; and it is apparent from the wording of Rule 703 that there is no *general* requirement that the other expert testify as well." *Dura Auto. Sys. of Indiana v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002). These particular opinions, however, do not rely "in part" on the purported expertise of other testifying experts. *See id*. Rather, Captain Karentz repeats and concurs with their opinions, without additional analysis. The Court does not need an expert to reiterate other experts' testimony. *See United States v. Hall,* 93 F.3d 1337, 1343 (7th Cir. 1996) ("Unless the expertise adds something, the expert is at best offering a gratuitous opinion"). Accordingly, the Court strikes these opinions on relevance grounds.[2] The Court further strikes Captain Karentz's related opinion – that Ingram knew about the hazards of approaching the Marseilles Lock and Dam "downriver during high flood stages." (R.770-4,

---

[2] The fact that the United States has voluntarily withdrawn Captain Jamison as an expert (R.844), and that the Court previously struck Captain Kinsey's "alternative option" opinion (R.837, Kinsey Opinion at 12-13), does not change this result. After reviewing the *Daubert* record, the Court finds no indication that Captain Karentz performed independent analyses to support these opinions. Nor is there any indication that he based such opinions on "sufficient facts or data." Accordingly, the Court excludes this testimony. *See Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014) ("Expert testimony is admissible at trial if the testimony is relevant to a fact in issue, is based on sufficient facts or data, and is the product of reliable scientific or other expert methods that are properly applied").

Karentz Rep. at 10). Here, again, Captain Karentz draws solely from the record evidence—including fact witness testimony and a Corps manual—as well as from Captains Kinsey and Jamison, without any expert analysis. As the Court has previously recognized, expert opinion must be based on the application of experience or knowledge, not merely drawn from facts in the record. *See Alcala v. Emhart*, No. 04 C 205, 2006 WL 5112759, at *1 (N.D. Ill. Apr. 25, 2006). The Court therefore strikes this opinion.

### III. Conflicting Evidence Does Not Render Captain Karentz's Opinions Unreliable

Ingram next argues that Captain Karentz "bases other opinions on facts that are completely unsupported by the record, including non-existent weather and river forecasts and river closures." (R.770-1, Opening Br. at 1-2). In particular, Ingram points to record evidence indicating that—despite Captain Karentz's suggestions to the contrary—(i) the Coast Guard did not close the Illinois River until the evening of April 18, *after* the accident; and (ii) the Coast Guard did not issue any "flood stage" forecasts for the Illinois Waterway and/or the Marseilles Pool until the night of April 17. (*Id.* at 9-11). According to Ingram, Captain Karentz's failure to consider "critical" weather information—including river forecasts specific to the Illinois Waterway, Coast Guard Captain Jason Neubauer's deposition testimony, and two Rule 30(b)(6) depositions of the National Weather Service—necessarily renders these opinions unreliable under *Daubert*.

As the Court has previously observed, however, the presence of conflicting underlying evidence speaks to the weight of the proffered opinion, not its admissibility. *See NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 789-90 (7th Cir. 2000); *Nolan v. United States*, No. 12 C 0247, 2015 WL 5159888, at *7 (N.D. Ill. Sept. 1, 2015). At trial, Ingram can challenge the accuracy of the underlying evidence by using vigorous cross-examination and presenting contrary evidence.

8

*See Lapsley*, 689 F.3d at 805; *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 768 (7th Cir. 2013) ("The fact that an expert's testimony contains some vulnerable assumptions does not make the testimony irrelevant or inadmissible"). In addition, Ingram may proffer its own expert—Captain Samuel Schropp—to explain why the Court should give primacy to river stage forecasts over "general region" weather reports in rendering its liability determinations. (R.824, Reply Br. at 2-4). Captain Karentz's "best practices" opinions, however, are not rendered unreliable by the presence of conflicting evidence or by expert disagreement as to weight.[3]

The Court nonetheless cautions Captain Karentz and MESD that—to the extent Captain Karentz relies on "non-existent" sources to generate unsupported assertions—the Court will strike such testimony.[4] *See Brown*, 765 F.3d at 772 ("Rule 703 requires the expert to rely on 'facts or data,' as opposed to subjective impressions"); *Metavante*, 619 F.3d at 760; *see also Armament Sys. & Procedures, Inc. v. IQ Hong Kong Ltd.*, No. 00-C-1257, 2007 WL 4747940, at *2 (E.D. Wis. Apr. 27, 2007) (reserving the right to "entertain objections and disregard testimony" should the proffered expert testimony "cross the line" into irrelevancy or unreliability during bench trial). The Court observes that *Daubert* concerns—including "the trier of fact being fooled by evidence of dubious merit"—are not as significant here, given that this is a

---

[3] The Court further finds Captain Karentz's "best practices" opinions useful to the trier of fact, unlike the previously-excluded "weather-related" opinions of Captain Kinsey. (R.837, Kinsey Opinion at 13-14). Captain Karentz's report points to specific sources of weather-related information available to Ingram throughout April 16-18, 2013, opining that—under such circumstances, and according to industry custom and his own experience—Ingram's voyage and/or contingency plan should have included details such as bailout points and safe berths, and Ingram's management should have taken action sooner. (R.770-4, Karentz Rep. at 11-14; R.770-2, Karentz Dep. Tr. at 131-34, 271-73; R.817, MESD Response Br. at 9-11). These opinions, thus, appear to involve the application of specialized, "experience-based" knowledge, as contemplated under Rule 702. *See Alcala*, 2006 WL 5112759 at *1; *see also Hartman*, 758 F.3d at 817 (the inquiry is "whether the testimony would have assisted the trier of fact in understanding the evidence or in determining the fact in issue").

[4] The Court cannot assess reliability on an assertion-by-assertion basis at this time, insofar as Captain Karentz's report does not cite to record evidence on such a basis. His report does, however, list out his extensive reliance materials. (R.770-4, Karentz Rep. at 3-4). The Court does not imply that Captain Karentz *does* rely on "non-existent" sources – only that MESD has not yet identified the particular piece of record evidence supporting, for example, his river closure assertion. The parties also do not identify it in Captain Karentz's deposition transcript.

9

bench trial. *See Taubensee Steel & Wire Co. v. Macsteel Int'l USA Corp.*, No. 9 C 1505, 2011 WL 1651239, at *4 (N.D. Ill. May 2, 2011); *The Medicines Co. v. Mylan Inc.*, No. 11-CV-1285, 2014 WL 1979360, at *5 (N.D. Ill. May 15, 2014); *Loeffel Steel*, 372 F. Supp. 2d 1104, 1122-23 (N.D. Ill. 2005). As such, the Court denies that aspect of Ingram's motion, reserving the right to strike any opinion if, at the bench trial, it "turns out not to meet the standard of reliability established by Rule 702." *Estate of Stuller*, 811 F.3d at 895 n.3.

## IV. Captain Karentz's Manual Opinions Are Reliable

Finally, Ingram challenges Captain Karentz's opinions about Ingram's Manual on the basis that they derive from "the invisible yardstick of his own subjective views." (R.770-1, Opening Br. at 12-13). According to MESD, however, Captain Karentz "authored several safety manuals and contingency plans for various vessels throughout his career which addressed voyage and contingency plans in this context." (R.817, Response Br. at 11) (citing R.770-2, Karentz Dep. Tr. at 250). It appears, therefore, that Captain Karentz's opinion stems from his own maritime training and experience. If the Court later determines that it cannot properly evaluate the basis for this opinion, the Court will strike the testimony at such time. *See Metavante*, 619 F.3d at 760; *see also* Fed. R. Evid. 702, 2000 Advisory Comm. Note ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts"). Ingram's chief counterargument—that Captain Karentz's "ocean and coastal navigational experience translates poorly to the inland river system"—speaks to the weight of his proffered testimony, not its admissibility. Accordingly, the Court denies that aspect of Ingram's motion.

## CONCLUSION

For the foregoing reasons, the Court, in its discretion, grants in part and denies in part Ingram's *Daubert* motion.

Dated:  August 16, 2016                ENTERED

_____
AMY J. ST. EVE
United States District Court Judge