**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF INGRAM BARGE COMPANY AS OWNER OF THE M/V DALE A. HELLER AND THE IB9525, IN025300, IN085089, IN095041, IN096081, IN107057, AND IN117513, PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY, | Civil Action No.: 13 C 3453<br>Civil Action No.: 13 C 4292<br>(Consolidated) |
| *Consolidated with,* | Judge Amy J. St. Eve |
| IN THE MATTER OF AMERICAN COMMERCIAL LINES, LLC, AS OWNER AND INLAND MARINE SERVICE, INC. AS OWNER *PRO HAC VICE* OF THE M/V LOYD MURPHY FOR EXONERATION FROM OR LIMITATION OF LIABILITY. | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On May 6, 2016, the United States moved to limit the testimony of Petitioner Ingram Barge Company's expert, Captain Samuel Schropp, pursuant to the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). (R.762). Claimant Marseille Elementary School District ("MESD") also moved to exclude the supplemental opinions of Captain Schropp. (R.768). For the following reasons, the Court, in its discretion, grants in part and denies in part the United States' motion, and denies MESD's motion.

**BACKGROUND**

I. **Factual Background**

On April 18, 2013, the M/V Dale Heller—owned by Petitioner Ingram Barge Company—attempted to navigate its fourteen-barge tow past a federal dam located near the town of Marseilles, Illinois during a high-water situation. Other maritime vessels agreed to assist the Dale Heller in this navigation attempt, including: (1) the M/V Loyd Murphy ("Loyd Murphy"), operated by Inland Marine Service, Inc. ("IMS") and owned by American Commercial Lines, LLC; (2) the M/V City of Ottawa, a United States Army of Engineers ("Corps") vessel; and (3) the M/V Creve Coeur, another Corps vessel.[1] While traversing Illinois River Mile 247.0 near the Marseilles Dam, the Dale Heller's tow broke apart, and seven of its barges either allided with the dam or sank upriver from it. Subsequent to this incident, the river waters overtopped the surrounding earthen dike and flowed into the town of Marseilles, causing substantial damage to real and personal property.

Ingram and IMS both filed a complaint in admiralty for exoneration from or limitation of liability in connection with this April 18, 2013 incident. (R.1; R.1, 13-cv-04292). The United States filed a claim in both limitation actions for damages to the Marseilles Dam and related structures. (R.129, R.374). Individual claimants also filed general maritime claims against Ingram, IMS, and the United States for their resulting property damage.

II. **Captain Schropp's Qualifications**

Captain Samuel Schropp has decades of experience in the inland marine industry. In 1978, he received his 100 Gross Ton Western Rivers Passenger Operators license, and, two years later, he received his Operator Uninspected Towing Vessels, Western Rivers and Inland Waters

---

[1] Other vessels, including the M/V City of Joliet, the M/V Cody Boyd, and the Nancy S. provided additional assistance to the Dale Heller throughout April 17-18, 2013.

license. Under those licenses and others, he has served as a pilot and captain on various towing vessels in inland waters, including the Upper Mississippi River, Lower Mississippi River, the Illinois River, the Ohio River, the Tennessee River, and the Arkansas Rivers, as well as the Gulf Intracoastal Waterway. He also received his Designation Examiner certification from the United States Coast Guard in 2004. From 1990-2005, he worked for Ingram Barge Company as a pilot. In 2004, he formed Schropp Marine Consulting LLC, which provides "management/leadership and safety training, simulator facilitation, and expert witness services to the brown water marine industry." He continues to serve as a "trip pilot" for various towing companies on the Western Rivers, and has served as an expert witness in several admiralty cases. (R.789-4, Schropp CV; R.789-1, Schropp Rep. at 5-6).

### III. Captain Schropp's Expert Opinions

In his report dated February 3, 2016, Captain Schropp offers several opinions about the events of April 17-18, 2013, leading up to the dam allision. (R.789-1, Schropp Rep.). In particular, Captain Schropp opines as to the experience and competency of the Dale Heller's captain, the seaworthiness of the Dale Heller, and the appropriateness of its tow characteristics and configurations given the prevailing weather conditions and forecasts. He also offers opinions relating to the prudence of the Dale Heller's transit and mooring decisions on April 16-17, and of the April 18 plan to move the Dale Heller's tow into the Marseilles Canal. Ultimately, Captain Schropp opines that "the sole cause of this incident" was the failure of Lockmaster Larry Rodriguez—a Corps employee—to "reduce the flow of water through Marseilles Dam so that the M/V Dale A. Heller, its crew, and tow could safely enter Marseilles Canal." (*Id.*).

Captain Schropp's supplemental report, dated March 19, 2016, and produced on March 21, 2016, opines on the adequacy of Ingram's Policy and Procedures Manual. (R.789-2).

3

**DAUBERT STANDARD**

"A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993)." *Brown v. Burlington No. Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014). "The rubric for evaluating the admissibility of expert evidence considers whether the expert was qualified, whether his methodology was scientifically reliable, and whether the testimony would have assisted the trier of fact in understanding the evidence or in determining the fact in issue." *Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 817 (7th Cir. 2014); *see also Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015) ("Rule 702 and *Daubert* require the district court to determine whether proposed expert testimony is both relevant and reliable"). Although the Seventh Circuit reviews "the district court's application of *Daubert* [] de novo," if "the court adhered to the *Daubert* framework, then its decision on admissibility is reviewed for abuse of discretion." *Estate of Stuller v. United States*, 811 F.3d 890, 895 (7th Cir. 2016).

A district court's evaluation of expert testimony under *Daubert* does not "take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012); *see also Ortiz v. City of Chicago*, 656 F.3d 523, 536 (7th Cir. 2011) ("The admissibility determination is not intended to supplant the adversarial process, and so even 'shaky' testimony may be admissible"). Once it is determined that "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley*, 689 F.3d at 805 (quoting *Daubert*, 509 U.S. at 596). A district court's inquiry under *Daubert* is a

flexible one and district courts have wide latitude in performing this gate-keeping function. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Hartman*, 758 F.3d at 818. "'[T]he key to the gate is not the ultimate correctness of the expert's conclusions,'" rather, "'it is the soundness and care with which the expert arrived at her opinion[.]'" *C.W. ex rel. Wood v. Textron, Inc.,* 807 F.3d 827, 834 (7th Cir. 2015) (citation omitted). The "proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence. *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

The Seventh Circuit has clarified that *Daubert*'s reliability and relevancy requirements "continue to apply in a bench trial." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010). "However, the usual concerns of the rule—keeping unreliable expert testimony from the jury—are not present in such a setting[.]" *Id.* As such, the Court may defer making reliability determinations until after the evidence is presented. *Id.*; *see also Estate of Stuller*, 811 F.3d at 895 n.3 ("Where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702"); *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) ("the court can hear the evidence and make its reliability determination during, rather than in advance of, trial"). A district court conducting a bench trial must nevertheless provide more than "conclusory statements of admissibility or inadmissibility to show that it adequately performed its gatekeeping function." *Metavante*, 619 F.3d at 760.

## ANALYSIS

### I. Captain Schropp's Opinions Regarding Lockmaster Duties

The United States first asks the Court to strike a "number of opinions regarding the responsibilities of the Corps of Engineers' Lockmaster, Larry Rodriguez." (R.762-1, Opening

5

Br. at 18). In particular, the United States challenges the following statements as unreliable and/or amounting to legal conclusions:

1. As lockmaster and the most experienced USA-COE employee on site, Mr. Rodriguez was responsible for ensuring that the tainter gates were lowered to 16 feet at the appropriate time in the transit. (Rodriguez: pg. 219).

2. Mr. Rodriguez was responsible for moving the gates on the dam to the agreed to opening at the appropriate time. As the most experienced USA-COE employee at [the] facility it was his job, not Captain White's, to time the lowering of the gates to the Heller's best advantage.

3. Mr. Rodriguez, as the most experienced USA-COE employee on site on April 18, was in charge or reducing the flow of water through the Marseilles Dam from a control station at the Marseilles Lock House. (Rodriguez: pg. 110).

4. Mr. Rodriguez should have been focused on facilitating the safe navigation of the M/Vs Dale A. Heller, Loyd Murphy, City of Ottawa, and Creve Coeur, and their crews into the Marseilles Canal (Appendix 4 Master Water Control Manual Marseilles Lock & Dam April 1996, USA-0042969, 0042994).

5. The sole cause of this incident was the failure of Lockmaster Larry Rodriguez to reduce the flow of water through Marseilles Dam so that the M/V Dale A. Heller, its crew, and tow could safely enter Marseilles Canal.

According to Ingram, these opinions "address the interaction between towboat captains and the Lockmaster and the respective authorities and responsibilities between the two as vessels approach the Marseilles Canal." They fall "within the expertise of [Captain Schropp's] license . . . and his practical experience as a mariner navigating these rivers for over forty years and past this particular dam 200 times." (R.789, Response Br. at 3-4). The United States disagrees, noting Captain Schropp's lack of expertise in dam operations. In particular, Captain Schropp has never worked for the Corps, and has no experience or training in gate operations. (R.789-3, Schropp Dep. Tr. at 24-25). As Captain Schropp testified, "I'm not an expert on dam operation. That's up to Larry Rodriguez and his expertise in manipulating those gates on the dam." (*Id.* at 205-06).

6

Expert opinions must be "based on sufficient facts or data" and "the product of reliable scientific or other expert methods that are properly applied." *See Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014); *see also Brown*, 765 F.3d at 772 ("Rule 703 requires the expert to rely on 'facts or data,' as opposed to subjective impressions"). Moreover, expert opinions must be based on the application of experience or knowledge, not merely drawn from facts in the record. *See Alcala v. Emhart*, No. 04 C 205, 2006 WL 5112759, at *1 (N.D. Ill. Apr. 25, 2006).

Applying these principles, Opinion Nos. 1-4 do not pass the *Daubert* test. First, it is undisputed, as a factual matter, that Lockmaster Rodriguez operated the dam gates – not any Ingram representative. Captain Schropp's proffered expertise does not assist the trier of fact in this observation. *See Alcala*, 2006 WL 5112759 at *1. Furthermore, while Captain Schropp references a "responsibility" to lower the gates at the "appropriate time" or "to the Heller's best advantage," Ingram fails to identify any specialized knowledge or training bearing on these statements, and fails to explain Captain Schropp's methodology. *See Stuhlmacher*, 774 F.3d at 409. While Captain Schropp's maritime experience and his review of federal regulations and/or Corps manuals may enable him to speak to the customary interaction between towboat operators and the Marseilles lockmaster, he does not have the expertise to opine on Lockmaster Rodriguez's "duties" during the incident at issue. Accordingly, the Court strikes these opinions.

The Court declines, however, to strike Opinion No. 5. After reviewing the *Daubert* record, the Court is satisfied that Captain Schropp's methodology meets the Rule 702 standard. In particular, Captain Schropp analyzes the Dale Heller's transit, mooring, and configuration decisions throughout April 16-18, 2013, as drawn from the factual record, in light of his own experience as a mariner traversing the Marseilles Lock and Dam. As part of that analysis, he

opines that—during the attempted transit to the Marseilles Canal on April 18—"all of the participants in the operation were performing their assigned tasks" until, at a "critical point," Lockmaster Rodriguez departed from the agreed-upon plan regarding gate movements. (*See, e.g.*, R.789-1, Schropp Rep. at 6, 28-39). In view of Captain Schropp's proffered expertise and methodology, the Court declines to strike this opinion. To the extent the United States challenges Opinion No. 5 as a legal conclusion, moreover, the Court notes that there is no risk of jury confusion here, given that the trial is a bench trial. The Court will not accept Captain Schropp's "sole cause" opinion as a legal conclusion. *See Metavante*, 619 F.3d at 760; *Medicines Co. v. Mylan Inc.*, No. 11-CV- 1285, 2014 WL 1979360, at *5 (N.D. Ill. May 15, 2014) (noting that the "risk of confusion or prejudice" is lessened in a bench trial). The Court reserves the right to disregard expert testimony if, at trial, it "turns out not to meet the standard of reliability established by Rule 702." *Estate of Stuller*, 811 F.3d at 895 n.3. For these reasons, the Court denies that aspect of the United States' motion.

## II. Captain Schropp's Supplemental Opinions

In his supplemental report, Captain Schropp gives the following two opinions:

1. It is my opinion based on my experience, that a voyage plan as described by Captain Karentz (a formal written voyage plan) in his deposition is not customary nor industry standard in the inland towing industry.

2. It is my opinion, based on my experience and the evidence I have reviewed, that Ingram Barge Company's Policy and Procedures Manual is a comprehensive guide for Ingram personnel to use in piloting and managing an inland waterways towboat and they comply with or exceed industry standards.

(R.789-2). The United States and MESD now move to exclude these opinions on the grounds that Ingram impeded their ability to cross-examine Captain Schropp by: (i) producing this supplemental report two days before his deposition; and (ii) failing to produce any policy and procedures manuals forming the basis of Captain Schropp's second supplemental opinion.

"A court should not admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Rowe v. Gibson*, 798 F.3d 622, 627 (7th Cir. 2015) (citation and quotation omitted). At the same time, however, "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Trustees of Chicago Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Trust Funds v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787 (7th Cir. 2007). An expert witness meets the reliability prong under Rule 702, moreover, where he or she opines on the basis of such "specialized knowledge as opposed to subjective beliefs or speculations[.]" *Id.* Here, according to Captain Schropp's deposition testimony, he rendered the second supplemental opinion based on his experience as a "trip pilot" for various inland towing companies and his associated review of their policy and procedures manuals. (R.789-3, Schropp Dep. Tr. at 314-16). He does not, however, have these companies' manuals in his possession. (*Id.* at 317-22). While his extensive experience as an inland mariner lessens the concern that this opinion is "unsupported speculation," it is nonetheless true that a "claim cannot stand or fall on the mere ipse dixit of a credentialed witness." *Rowe*, 798 F.3d at 627 (citations omitted). Ultimately, the Court reserves opinion on the admissibility of this opinion until after Captain Schropp testifies at the bench trial where the Court can determine the prejudice, if any, to the United States and/or MESD by the non-production of these manuals. *See* Fed. R.Civ.P. 26(a)(2)(B)(i),(ii) (expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them"); Fed.R.Civ.P. 37(c)(1) (outlining a number of sanctions that the court may impose for a Rule 26 violation "unless the failure was substantially justified or is harmless"); *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 752 (7th Cir. 2005) (recognizing the

"breadth of the range of sanctions that the civil rules authorize for failure to disclose materials on which an expert's opinion is based"); *see also Metavante*, 619 F.3d at 760 (recognizing that the "usual concerns" of the *Daubert* rule are not present in a bench trial setting).

The Court also declines to strike Captain Schropp's first supplemental opinion, in which he purports to apply his experience as an inland mariner to challenge an opinion offered by the MESD expert, Captain Karentz. If the Court cannot properly evaluate the basis for this opinion after hearing Captain Schropp's testimony, the Court will strike the testimony at such time. *See Metavante*, 619 F.3d at 760; *see also* Fed. R. Evid. 702, 2000 Advisory Comm. Note ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts"). In declining to strike this opinion now, the Court also notes that (i) Ingram met the Court's filing deadline (R.674), and (ii) Captain Karentz himself opines on Ingram's manual based on his maritime training and experience. (R.817, MESD Response Br. at 11). Accordingly, the Court denies that aspect of MESD's motion.

## CONCLUSION

For these reasons, the Court, in its discretion, grants in part and denies in part the United States' motion. (R.762). The Court denies MESD's motion. (R.768).

**Dated:** August 16, 2016

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge